## Case No. 25-60090

In the
# United States Court of Appeals
### for the Fifth Circuit

CYNTHIA FISHER; ESTHER PAYTON, also known as Faye;
EDWARD WILLIAMS; MACEDONIA MISSIONARY BAPTIST CHURCH;
ROBERT ZELLNER; FRANCELIA CLAIBORNE,

*Plaintiffs–Appellants*,

*v.*

CITY OF OCEAN SPRINGS, MISSISSIPPI,

*Defendant–Appellee.*

On Appeal from the United States District Court for the
Southern District of Mississippi, 1:23-CV-265

## BRIEF OF APPELLANTS

C. Elizabeth Feder-Hosey
FEDER-HOSEY LAW
P.O. Box 1618
Ocean Springs, MS 39566
(228) 324-6038

Dana Berliner
*Lead Counsel*
Suranjan Sen
Dylan Moore
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellants** | **Counsel for Appellants** |
|---|---|
| Cynthia Fisher | INSTITUTE FOR JUSTICE |
| Esther Payton | Dana Berliner |
| Edward Williams | Suranjan Sen |
| Macedonia Missionary | Dylan Moore |
|    Baptist Church | |
| Robert Zellner | FEDER-HOSEY LAW |
| Francelia Claiborne | Celeste Elizabeth Feder-Hosey |

| **Appellee** | **Counsel for Appellee** |
|---|---|
| City of Ocean Springs, Mississippi | WILKINSON, WILLIAMS, BOSIO & |
| |    SESSOMS, III, P.L.L.C. |
| | Robert W. Wilkinson |
| | William R. Norman |

/s/ Dana Berliner
*Lead Counsel for Appellants*

i

## STATEMENT REGARDING ORAL ARGUMENT

This case presents an important question of constitutional law that this Court has not yet addressed. Two other circuits, considering similar statutory schemes to the one at issue here, have found that the Due Process Clause requires individualized notice to affected property owners. *Brody v. Village of Port Chester*, 434 F.3d 121, 129 (2d Cir. 2005); *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1319 (10th Cir. 2018). But the district court below disagreed. Appellants respectfully submit that oral argument will significantly aid the Court's adjudication of this case of first impression in this Circuit.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................................. i

Statement Regarding Oral Argument ........................................................ ii

Table of Authorities ...................................................................................... ii

Jurisdictional Statement ............................................................................. 1

Statement of the Issues ............................................................................... 2

Introduction .................................................................................................. 2

Statement of the Case ................................................................................. 4

    I.  Factual History ................................................................................... 4

        A.  Mississippi's urban renewal laws do not require notice of slum or blight designations. ........................................ 4

        B.  Ocean Springs places Plaintiffs' properties in an urban renewal area without notice. ......................................... 8

        C.  The City proposes an urban renewal plan and creates a plan opt-out form. ..................................................... 14

    II.  Procedural History ........................................................................ 15

    III.  Standards Governing Review ....................................................... 17

Summary of the Argument ....................................................................... 18

Argument ..................................................................................................... 20

    I.  Mississippi illogically requires owners to adjudicate a critical (and often successful) defense against eminent domain—that the area is not blighted—at the time of the designation instead of in an eminent domain action. ..................... 20

A.  Challenging slum or blight designations is an
    important defense against eminent domain for
    urban renewal, and it likely would have succeeded
    here.......................................................................................21

B.  In Mississippi, property owners have only ten days
    to challenge municipal blight designations............................23

    1.  People in Mississippi may challenge most
        municipal decisions either offensively or
        defensively.................................................................24

    2.  *Wiggins* created a unique exception for
        condemnation proceedings based on a blight
        designation. ...............................................................28

II. By creating the blighted area designation surreptitiously,
    Ocean Springs deprived Plaintiffs of their property
    rights without due process of law. ....................................29

    A.  Plaintiffs have property interests in retaining their
        properties and in their statutory right to appeal the
        City's slum designation. ..........................................29

        1.  Plaintiffs have an interest in retaining
            ownership of their properties and, therefore,
            in their defenses against eminent domain. .................31

        2.  Plaintiffs have an interest in their statutory
            right to challenge the City's blight
            designation under Miss. Code § 11-51-75. ...................33

    B.  Due process requires individual, mailed notice of
        the opportunity to challenge the slum and blight
        designation...............................................................37

        1.  In any forum the state prescribes for owners
            to present their opposition to the deprivation
            of property, due process requires a
            meaningful opportunity to be heard. ...........................38

2.    Due process mandates individual notice whenever feasible......................................39

3.    The City's "notice" was inadequate. ..............41

4.    *M.A.K.*, *Brody*, and *DeRose* are persuasive. .................43

a.    *M.A.K. Investment Group, LLC v. City of Glendale* ............................43

b.    *Brody v. Village of Port Chester* ........................45

c.    *Harrison Redevelopment Agency v. DeRose* ..................47

III. The district court's contrary reasoning lacks merit and invites a circuit split. ..................................49

A.    The district court's decision is in tension with the Tenth Circuit in finding that the availability of other defenses rendered the notice-free blight designation constitutional.......................................50

B.    The district court broke with the Second and Tenth Circuits in finding no property interest in the statutory cause of action to challenge the City's designation of the urban renewal area....................................54

C.    The district court broke with the Second and Tenth Circuits in portraying the City's slum and blight designation as a solely "legislative" action..............................59

Conclusion...............................................67

Certificate of Service .......................................68

Certificate of Compliance........................................69

v

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adair v. Nashville Hous. Auth.,*
  388 F. Supp. 481 (M.D. Tenn. 1974) ................................................... 65

*Apostle v. City of Seattle,*
  422 P.2d 289 (Wash. 1966) ................................................................. 23

*Archie v. City of Canton,*
  92 So. 3d 1279 (Miss. Ct. App. 2012) ................................................. 27

*Baldwin v. Hale,*
  68 U.S. 223 (1864) ................................................................................ 3

*Baymeadows, LLC v. City of Ridgeland,*
  131 So. 3d 1156 (Miss. 2014) .............................................................. 55

*Bd. of Supervisors v. Qualite Sports Lighting, LLC,*
  337 So. 3d 1040 (Miss. 2022) ................................................................ 5

*Bell v. Burson,*
  402 U.S. 535 (1971) ............................................................................. 38

*Boddie v. Connecticut,*
  401 U.S. 371 (1971) ............................................................................. 34

*Boelts v. City of Lake Forest,*
  127 Cal. App. 4th 116 (2005) .............................................................. 23

*Brody v. Village of Port Chester,*
  434 F.3d 121 (2d Cir. 2005) ..................ii, 34, 37, 45, 46, 47, 64, 66, 67

*Carpenter v. City of Petal,*
  699 So. 2d 928 (Miss. 1997) ............................................................... 27

*Centene Plaza Redev. Corp. v. Mint Props.,*
  225 S.W.3d 431 (Mo. 2007) ........................................................... 22, 23

*City of Jacksonville v. Moman,*
    290 So. 2d 105 (Fla. Dist. Ct. App. 1974)............................................ 23

*City of New York v. N.Y., New Haven, & Hartford R.R. Co.,*
    344 U.S. 293 (1953) ..................................................................... 39

*City of Norwood v. Horney,*
    853 N.E.2d 1115 (Ohio 2006)........................................................... 23

*In re Condemnation by Redev. Auth. of Lawrence Cnty.,*
    962 A.2d 1257 (Pa. Commw. Ct. 2008)................................................ 22

*County Line Joint Venture v. City of Grand Prairie,*
    839 F.2d 1142 (5th Cir. 1988)................................................ 61, 62, 63

*Crane v. City of Arlington,*
    50 F.4th 453 (5th Cir. 2022) ........................................................... 17

*Crane v. Kentucky,*
    476 U.S. 683 (1986) ..................................................................... 38

*Crook v. City of Madison,*
    168 So. 3d 930 (Miss. 2015) ........................................................... 25

*Foster v. Edwards,*
    61 So. 3d 960 (Miss. Ct. App. 2011) .................................................. 27

*Gabe Realty Corp. v. City of White Plains Urb. Renewal
    Agency,*
    195 A.D.3d 1020 (N.Y. App. Div. 2021)............................................... 22

*Gallenthin Realty Dev., Inc. v. Borough of Paulsboro,*
    924 A.2d 447 (N.J. 2007)............................................................... 23

*Goss v. Lopez,*
    419 U.S. 565 (1975) ..................................................................... 63

*Greene v. Lindsey,*
    456 U.S. 444 (1982) ................................................................. 38, 40

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004) ..................................................................... 38

*Hardwicke v. City of Lubbock,*
150 S.W.3d 708 (Tex. App. 2004) ....................................................... 66

*Harrison Redev. Agency v. DeRose,*
942 A.2d 59 (N.J. Super. Ct. App. Div. 2008)
.................................................................. 34, 37, 47, 48, 49

*Heritage Hunter Knoll, LLC v. Lamar County,*
356 So. 3d 91 (Miss. 2023) ................................................................. 24

*James v. Cleveland Sch. Dist.,*
45 F.4th 860 (5th Cir. 2022) ............................................................. 29

*Logan v. Zimmerman Brush Co.,*
455 U.S. 422 (1982) ............................................................... 33, 34, 37

*M.A.K. Inv. Grp., LLC v. City of Glendale,*
897 F.3d 1303 (10th Cir. 2018).................................................. *passim*

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ...................................................................... 31, 32

*Mayor of Clinton v. Welch,*
888 So. 2d 416 (Miss. 2004) ......................................................... 25, 26

*Mennonite Bd. of Missions v. Adams,*
462 U.S. 791 (1983) ........................................................................... 40

*Morley v. Jacksonville Redev. Auth.,*
632 So. 2d 1284 (Miss. 1994) ...................................................... 53, 54

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306 (1950) ..................................................... 32, 37, 38, 43

*Newell v. Jones County,*
731 So. 2d 580 (Miss. 1999) ............................................................. 24

*Opulent Life Church v. City of Holly Springs,*
697 F.3d 279 (5th Cir. 2012) ............................................................ 31

*Paulk v. Hous. Auth. of City of Tupelo,*
195 So. 2d 488 (Miss. 1967) ............................................... 21, 22, 53

*Prudential Bldg. & Loan Ass'n v. Urb. Renewal & Cmty. Dev.*
  *Agency of Louisville*,
  464 S.W.2d 629 (Ky. Ct. App. 1971) ..................................... 23

*Reel Pipe & Valve Co. v. Consolidated City of Indianapolis-*
  *Marion County*,
  633 N.E.2d 274 (Ind. Ct. App. 1994) ............................. 65, 66

*Schroeder v. City of New York*,
  371 U.S. 208 (1962) .......................................................... 40

*Small Engine Shop, Inc. v. Cascio*,
  878 F.2d 883 (5th Cir. 1989) ............................................. 62

*Texaco, Inc. v. Short*,
  454 U.S. 516 (1982) ..................................................... 60, 61

*Tilghman v. City of Louisville*,
  874 So. 2d 1025 (Miss. Ct. App. 2004) .............................. 24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................... 65

*Trump v. J.G.G.*,
  145 S. Ct. 1003 (2025) ...................................................... 39

*Tulsa Pro. Collection Servs., Inc. v. Pope*,
  485 U.S. 478 (1988) ............................................... 33, 39, 40

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ............................................................ 31

*United States v. LULAC*,
  793 F.2d 636 (5th Cir. 1986) ............................................. 59

*Village of Wheeling v. Exch. Nat'l Bank*,
  572 N.E.2d 966 (Ill. App. Ct. 1991) .................................. 65

*Walker v. Epps*,
  550 F.3d 407 (5th Cir. 2008) ............................................. 58

*Wiggins v. City of Clinton,*
  298 So. 3d 962 (Miss. 2020) ...................................................... *passim*

STATUTES

28 U.S.C.
  § 1291 ............................................................................................. 1
  § 1331 ............................................................................................. 1
  § 1343 ............................................................................................. 1

42 U.S.C. § 1983 ............................................................................... 1, 58

Colo. Rev. Stat. § 31-25-107(1)(b) ................................................ 44

Miss. Code
  § 11-51-75 ................................................................... *passim*
  § 43-35-3 ..................................................................................... 56
  § 43-35-3(h)–(k) ......................................................................... 22
  § 43-35-3(h) ....................................... 4, 5, 22, 36, 56, 58
  § 43-35-3(i) ........................................ 4, 5, 22, 36, 56, 58
  § 43-35-3(k) ................................................................. 4, 36
  § 43-35-3(*l*) ................................................................................. 6
  § 43-35-11 ................................................................. 6, 22, 31
  § 43-35-13(a)–(b) ......................................................................... 6
  § 43-35-13(a) ...................................... 4, 6, 22, 32, 52
  § 43-35-13(b) .............................................................................. 31
  § 43-35-13(d) ................................................................................ 6
  § 43-35-13(e) .............................................................................. 54
  § 43-35-15(c) .............................................................................. 31
  § 43-35-17 ..................................................................................... 6
  § 43-35-17(a) .................................... 4, 22, 32, 52

N.J. Stat. § 40A:12A-6 ................................................................ 48

N.Y. Em. Dom. Proc. Law
  § 202(C) ....................................................................................... 46
  § 204(C) ....................................................................................... 46

CONSTITUTIONAL PROVISIONS

Miss. Const. art. 3, § 17 ............................................................... 21

Miss. Const. art. 3, § 17A ........................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................ 17

Fed. R. Civ. P. 12(b)(6) ............................................................ 17

**OTHER AUTHORITIES**

2A Nichols on Eminent Domain § 7.06[25] (2025 update) ..................... 22

Mem. Supp. Defs.' Mot. J. on the Pleadings & Mot. in Lim.,
    *Brody v. Village of Port Chester*, 2007 U.S. Dist. LEXIS
    15746 (S.D.N.Y. Mar. 7, 2007) (No. 00 Civ. 7481 (HB)),
    2006 U.S. Dist. Ct. Motions LEXIS 59522, at *16 ............................ 64

Reply Br., *Wiggins v. City of Clinton,* No. 19-CA-00010, 2020
    WL 1689904 (Miss. Jan. 9, 2020) ....................................... 28

## JURISDICTIONAL STATEMENT

Plaintiffs' lawsuit arises out of 42 U.S.C. § 1983. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. On January 31, 2025, Judge Taylor B. McNeel of the U.S. District Court for the Southern District of Mississippi issued an opinion and final judgment granting Defendant's Motion to Dismiss with Prejudice. On February 26, 2025, Plaintiffs filed a timely notice of appeal in the district court, which this Court docketed the next day. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Did the district court err in holding that due process does not require individual notice of property owners' single opportunity to challenge the designation of their area as slum or blighted, when that designation gives Mississippi municipalities the authority to use eminent domain?

## INTRODUCTION

Property owners in Mississippi receive absolutely no notice of the hearing or the decision that their area is slum or blighted. But that decision has serious, lasting consequences. A slum or blight determination allows cities to exercise eminent domain against properties in the area and provides a "public use" for the taking. The designation never expires.

Mississippi law gives owners just one opportunity to challenge whether the slum or blight designation is valid. Owners may bring an action under Miss. Code § 11-51-75 within ten days of the resolution designating the area. Despite the extremely tight timeframe to bring the challenge, Mississippi requires no notice of the hearing to assess the

proposed designation, no notice of the resolution's passage, and no notice of the opportunity to challenge it. That lack of notice violates due process.

Before venturing into the technical arguments in this case, it is important to take a step back. If the government wants to take someone's property by eminent domain, that person is entitled to defend herself against the taking. Due process requires that the owner have a meaningful opportunity to be heard opposing the taking and that she have notice such that she can make her defense. *Baldwin v. Hale,* 68 U.S. 223, 233 (1864) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."). Mississippi has fractured this process and now places the litigation of one of the strongest means to oppose eminent domain long before the government ever files a condemnation action. The court below held that, by breaking off this one piece of constitutional opposition to eminent domain and labeling it "legislative," cities can avoid giving owners notice and a meaningful opportunity to be heard. Due process does not allow this maneuver.

If a state gives someone just one chance to assert a critical defense to the loss of her property, it must tell her about it.

3

## STATEMENT OF THE CASE

### I.    Factual History

#### A.    Mississippi's urban renewal laws do not require notice of slum or blight designations.

Cities in Mississippi may not exercise eminent domain solely for private economic development. Miss. Const. art. 3, § 17A. But they may use eminent domain "in connection with an urban renewal project[.]" Miss. Code § 43-35-17(a); *see also Wiggins v. City of Clinton*, 298 So. 3d 962, 965 (Miss. 2020) ("Our jurisprudence dictates that urban renewal is a permissible public use for eminent-domain purposes.").

Mississippi statutes prescribe a two-step process for cities that want to complete urban renewal projects. To begin, the city must pass a resolution designating an "urban renewal area,"—a sterilized phrase that brands the properties in the community as "a slum area or a blighted area or a combination thereof[.]" Miss. Code § 43-35-13(a); *see also id.* § 43-35-3(h), (i), (k) (defining "[s]lum area," "[b]lighted area," and "[u]rban renewal area").

The city must determine that certain factual criteria exist before designating an area as either slum or blighted. *Id.* § 43-35-13(a). Both designations require the area to have at least one item from each of three

lists. Slums must have a "predominance" of conditions like dilapidation, deterioration, or lack of light and air. *Id.* § 43-35-3(h). Those characteristics must then be "conducive to" conditions like "ill health" and also be "detrimental to" public health or safety. *Id.* Blighted areas must have a "substantial" amount of slum conditions or a "predominance" of other conditions like faulty lot layout, unusual conditions of title, or conditions that endanger life or property by fire. *Id.* § 43-35-3(i). And those conditions must, for example, "substantially impair[] or arrest[] the sound growth" of the city and be a "menace to" public health or safety. *Id.*

A city that wants to designate an area as slum or blighted must hold a public hearing in which it considers the evidence supporting or disproving the slum or blight designation. Only evidence introduced at the hearing may be considered in deciding whether the area meets the statutory criteria. *See* Miss. Code § 11-51-75; *Bd. of Supervisors v. Qualite Sports Lighting, LLC*, 337 So. 3d 1040, 1046 (Miss. 2022) ("[T]he appeal permitted by the Legislature is one in which new evidence cannot be considered.").

If a city makes the factual determination that the area meets the slum and/or blight criteria, property owners have ten days to appeal that

determination. *Wiggins*, 298 So. 3d at 964–65 (citing Miss. Code § 11-51-75). If the appeal is unsuccessful (or if owners fail to file one), the city's adjudication of blight is conclusive—and it lasts forever. *See id.*; *see also* ROA.642 (district court noting that blight designations never expire).

Having designated an area as slum or blighted, the city may then approve an urban renewal plan. *See* Miss. Code § 43-35-13(a)–(b). That plan must detail the specific urban renewal project that the city hopes to undertake. *See id.* § 43-35-3(*l*) (defining "[u]rban renewal plan"). After notice by publication and a public hearing on the urban renewal plan, the city may adopt the plan if it meets certain statutory requirements. *See id.* § 43-35-13(d). And with that plan adopted, the city can sue to acquire properties within its blighted area by eminent domain. *Id.* § 43-35-17. Conversely, if there is no validly designated slum or blighted area undergirding the plan, there is no public use in urban renewal. *Id.* §§ 43-35-11, 43-35-13(a).

Although state law requires some form of notice when a city hopes to pass an urban renewal *plan*, it contains no such requirement when the city holds its earlier hearing to create (or modify) an urban renewal *area*. *See* ROA.151; ROA.154. In other words, before holding a hearing to

designate a neighborhood as a slum, the city need not provide any notice to affected property owners that they are about to lose their rights or about their opportunity to adjudicate that loss. *See* ROA.151–52. The statutes require no notice, so of course they do not require notice with sufficient time for owners to meaningfully prepare for the hearing. *See* ROA.151–52. Nor must the city notify owners that their property has been included within an urban renewal area after the resolution designating or modifying an urban renewal area has been enacted. *See* ROA.152.

This lack of notice has devastating implications for property owners' rights. The blight-resolution hearing is the owners' only opportunity to present evidence in their favor. Assuming the municipality makes a finding of slum or blight based on the hearing evidence, owners have only ten days to challenge the urban-renewal-area designation in state court. Miss. Code § 11-51-75; *Wiggins*, 298 So. 3d at 964–65. After the ten-day window lapses, property owners permanently lose their ability to challenge the urban-renewal-area designation—even as a defense to a subsequent exercise of eminent domain based on that designation. *See id.* at 964–65 (holding that a property owner's challenge

7

to an urban-renewal-area designation, which was brought at the time of the taking, was untimely because more than ten days had passed since the resolution was enacted).

The problem is that nobody tells the property owners any of this. As a result, they may not find out that their property has been declared slum and/or blighted—and is therefore vulnerable to eminent domain as part of an urban renewal project—until long after the designation. ROA.153. By then, their only chance to challenge the urban-renewal-area designation and defend their property interests will have come and gone. *Wiggins*, 298 So. 3d at 964–65.

### B.    Ocean Springs places Plaintiffs' properties in an urban renewal area without notice.

Plaintiffs are longtime members of the Ocean Springs community. ROA.147. Most Plaintiffs live within the City's century-old, majority-Black Railroad District—a section of town situated just south of the railroad tracks that run east to west through the middle of the City. ROA.167–68; ROA.170–71; ROA.173. The heart of the Railroad District is Macedonia Missionary Baptist Church, a 130-year-old pillar of the Ocean Springs Community whose former pastor became the City's first Black alderman in the 1980s. ROA.175–76.

Plaintiffs feel a deep connection to the Railroad District. Faye Payton, Francelia Claiborne, and Edward Williams all own homes in the District, as their families have for generations. ROA.167–68; ROA.170–71; ROA.173. Cynthia Fisher and her family are generational residents of the District as well. ROA.166–67. Macedonia Missionary Baptist Church is a Mississippi non-profit corporation that owns several properties in the District.[1] ROA.175. Robert Zellner also owns multiple parcels in the City (outside the Railroad District), including one that houses Zellners Import Auto Inc., the small business Robert founded with his father in 1982. ROA.181–83. Below is a composite photograph of some

---

[1] The City included five Church parcels within the slum and blighted area, including two lots for Church parking and a space where the Church holds outdoor events. ROA.176–79.

of Plaintiffs' parcels within the designated area (comprised of images in

Plaintiffs' amended complaint):



Edward's home at 819 General Pershing Avenue (ROA.173), Francelia's home at
1307 Robinson Street (ROA.168), Faye's home at 924 Cash Alley (ROA.170),
Robert's shop at 10 Franklin Road (ROA.182) and two of Macedonia Missionary
Baptist Church's parking lots (ROA.177; ROA.179).

In the spring of 2023, the City declared Plaintiffs' properties slum

and blighted without notice or a meaningful opportunity to be heard.

ROA.186. The Ocean Springs Board of Aldermen held a public hearing on April 4, 2023, to discuss passing a resolution that would designate an urban renewal area. ROA.155–56. The week before the hearing, the City posted an agenda item on its website that—in its entirety—read: "Adopt a Resolution approving the Urban Renewal Map." ROA.156. The agenda did not include a list of properties that would be affected by the designation. The same week the City posted its agenda for the April 4 hearing online, it posted proposed Urban Renewal Maps inside City Hall. ROA.156. Like the agenda, the proposed maps did not include a list of properties that would be affected. ROA.156.

The City took no steps to give affected property owners individual notice about the April 4, 2023 hearing or its significance. ROA.155–57; ROA.186. The City did not notify them about the hearing, their opportunity to present evidence, the fact that the proposed area included their properties, or the implications for eminent domain. ROA.155–57; ROA.186. Nor did the City inform them that, should the urban-renewal-area resolution pass, they would have only ten days to challenge it. ROA.157; ROA.186. As a result, Plaintiffs knew nothing about the City's plans to designate their neighborhood as slum and blighted on April 4,

2023, or any events that might follow from it. ROA.166; ROA.168; ROA.171; ROA.174; ROA.179; ROA.184; ROA.187.

At the April 4 hearing, the City passed a resolution designating an urban renewal area[2] that included Plaintiffs' properties "inasmuch as there is substantial evidence of the existence of slum and blighted areas within those tracts." ROA.157. Francelia, Faye, Edward, Robert, and the Church own properties that the City placed within the blighted area on April 4. ROA.168; ROA.171; ROA.174; ROA.176; ROA.184. Consistent with Mississippi state law, the City made no attempt to personally notify any affected property owners—including Plaintiffs—that their properties had been included in an urban renewal area. ROA.186–87. Nor did it explain to affected property owners the significance of a blight designation after the April 4 hearing. ROA.161; *see also* ROA.186–87. Nor did it notify them that they had only ten days to contest the City's blight designation in court. ROA.187.

To establish the statutory prerequisites for slum and blight, the resolution referred to letters the City received from three Ocean Springs officials: the city planner, the director of public works, and an official with

---

[2] Technically, there were six maps and thus six areas. ROA.157.

the building department. ROA.157. Only one of the letters actually was attached, and it was dated the same day as the hearing and watermarked "DRAFT." ROA.157. Plaintiffs obtained the other two by public records request. ROA.158. None of the three letters mentioned any specific properties or any specific slum or blighting conditions (listed in the statute or otherwise). ROA.157–58.

Plaintiffs' area did not meet the statutory definitions of slum or blight. ROA.159. But because they did not know about the April 4 hearing, Plaintiffs could not contest their inclusion in the area or the factual predicate for the urban-renewal-area designation. ROA.186–87. Had they known about the hearing, they would have attended and presented evidence, including expert evidence, showing that neither their properties standing alone nor the area where their properties lie are predominantly slum or blight. ROA.166–67; ROA.169; ROA.171–72; ROA.174–75; ROA.180; ROA.184–85; ROA.187. Similarly, because the City gave no notice of the urban-renewal-area resolution's passage, Plaintiffs did not find out that their properties had been designated slum and blighted until months later—long after the ten-day window to challenge the designation had lapsed. ROA.187; *see also Wiggins*, 298 So.

3d at 964–65. Had Plaintiffs learned that their properties were included in an urban renewal area in time to file a § 11-51-75 challenge, they would have done so. ROA.187. And as there was no basis for the creation of the urban renewal area, Plaintiffs likely would have prevailed, with or without new evidence. ROA.187. Instead, the issue of the validity of the slum and blight designation was conclusively adjudicated without them.

## C. The City proposes an urban renewal plan and creates a plan opt-out form.

Months later, in August 2023, the City unveiled a proposed urban renewal plan for the area designated on April 4. ROA.161. The plan slated many properties for "possible acquisition by the City for future development." ROA.162. The City scheduled a hearing on the plan for October 2, 2023, and published notice of the hearing in a local newspaper. ROA.162. This time, many members of the community learned about the upcoming hearing. After receiving public pushback at the hearing from residents who felt blindsided by the City's actions, the City did not vote on whether to adopt the proposed plan. ROA.162–63.

During the October 2 hearing, the City announced that it had created a form that would allow residents (but not business owners) to opt out of the proposed plan (but not the underlying slum and blight

designation). ROA.163. Plaintiffs or their relatives submitted opt-out forms for several affected properties—including non-residential properties. ROA.163. By its terms, the opt-out form did not extinguish the blight designation on Plaintiffs' neighborhood.

## II. Procedural History

On October 12, 2023, with an active blight designation and while the City's urban renewal plan and opt-out procedures were pending, Plaintiffs filed this lawsuit seeking declaratory and injunctive relief alongside nominal damages for the violation of their Fourteenth Amendment procedural due process rights. *See* ROA.11. On November 2, Ocean Springs filed its original motion to dismiss, largely on jurisdictional grounds. *See* ROA.87. The City also claimed that it intended to surgically remove Plaintiffs' properties from the blighted area. ROA.99 ("[T]he City is no longer proceeding with the urban renewal area declared by the Resolution or the proposed Plan, and *Plaintiffs will be specifically drawn out of both.*" (emphasis added)).

On November 21, 2023, the City rescinded the blight designation. ROA.165. Plaintiffs filed their First Amended Complaint on November 27. ROA.147. On December 11, the City moved to dismiss Plaintiffs'

amended complaint. ROA.193. In support of its motion, the City alleged that Plaintiffs' claim was simultaneously moot and unripe, ROA.206–07, and that, regardless, the Due Process Clause does not require that owners receive notice allowing them any meaningful opportunity to challenge a blight designation, ROA.201.

The district court recognized that this case presents a live controversy, even though the City repealed its April 4, 2023 slum and blight resolution. The court held that the case is not moot for two reasons. First, Plaintiffs asked for nominal damages for the City's failure to give individual notice; and second, the City's voluntary cessation of the challenged conduct (rescinding the blight resolution after Plaintiffs filed suit) did not render the case moot. ROA.659–65. Finally, the court determined that this case is ripe, as no further factual development is needed to determine whether the City's challenged policy violates due process. ROA.668.

Although the district court rejected the City's jurisdictional arguments, the court granted the City's motion on the merits. Citing cases finding that laws creating broad zoning or blight areas are usually "legislative" rather than "adjudicative" in character, the court found that

Plaintiffs have no right to receive notice of blight resolutions beyond the political process. ROA.672. The court rejected Plaintiffs' argument that, in Mississippi, owners' sole opportunity to challenge a blight resolution is at the time of its passage, whereafter they lose a key "defense to a subsequent eminent domain action." ROA.677. According to the district court, because owners retain *other* potential defenses to eminent domain, they need not receive notice allowing them a meaningful opportunity to raise this particular defense. ROA.678. Plaintiffs timely appealed. ROA.689.

## III.  Standards Governing Review

The district court granted the City's motion to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and denied its motion under Rule 12(b)(1). This Court "review[s] *de novo* a district court's dismissal under" Rule 12(b)(6). *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022). In conducting its review, the Court "must accept all facts as pleaded and construe them in the light most favorable to the plaintiff." *Id.* (citation omitted).

## SUMMARY OF THE ARGUMENT

Due process requires that owners get a meaningful opportunity to be heard where they may oppose the taking of their property by eminent domain. Whether the state chooses to place that opportunity before or after the filing of the eminent domain action, a meaningful opportunity to be heard requires notice.

A city may take property for urban renewal only within areas that meet statutory definitions of "slum" or "blight." If an owner can show that an area does not meet the definition, the city cannot take his property. Owners can succeed in that challenge, and Plaintiffs likely would have won if they had been able to adjudicate the validity of the April 4 blight designation before a court. *See* Part I.A. Mississippi allows owners to challenge the evidence justifying a slum or blight designation only in a proceeding brought within ten days of the resolution adopting it. The Mississippi Supreme Court prohibits owners from raising this important public use defense in the eminent domain proceeding. But because Plaintiffs lacked notice, the validity of the blight designation was conclusively decided without their participation. *See* Part I.B.

This scheme violated Plaintiffs' rights. Plaintiffs have protected property interests (1) in defending their properties and (2) in the statutory cause of action by which they may challenge the urban-renewal-area designation. *See* Part II.A. Given these interests, due process requires a meaningful opportunity to challenge a blight designation—whether as a defense to an eminent domain action (which is unavailable in Mississippi) or as an independent cause of action (which is available). Due process also requires individual notice of (1) the hearing to decide if an area is slum or blighted, (2) the designation of an urban renewal area, and (3) the availability of an appeal. *See* Part II.B.

By finding that Plaintiffs were not entitled to notice of the April 4 slum and blight designation, the district court's analysis breaks with the Tenth and Second Circuits' holdings in similar cases. The Tenth Circuit rejected the idea that the availability of other defenses affects the existence of a due process violation. *See* Part III.A. Both circuits found owners had a property interest in the cause of action. *See* Part III.B. And both held that an urban-renewal-area designation is not merely a legislative determination—it conclusively adjudicates a fact that cannot

be questioned later on, so property owners must know about it. *See* Part III.C.

## ARGUMENT

Whenever and however owners must challenge the taking of their property, the condemnor must provide a meaningful opportunity to be heard, and that requires notice. So if owners have just ten days from a blight designation's passage to assert one of their strongest defenses to an eventual taking based on the designation—lack of blight—they must have notice of that opportunity.

**I.  Mississippi illogically requires owners to adjudicate a critical (and often successful) defense against eminent domain—that the area is not blighted—at the time of the designation instead of in an eminent domain action.**

In a normal lawsuit, the plaintiff serves the defendant with a complaint. The defendant then knows she is being sued, that her property interests may be prejudiced, and that she needs to respond. If the court told the defendant that one of her key defenses had been litigated already, without notice, no one would hesitate to say that maneuver violated due process.

Under Mississippi's eminent domain law, however, by the time an owner is named in a lawsuit seeking eminent domain for urban renewal,

she has already—unknowingly—litigated and lost her claim that there is no blighted area and the urban renewal laws do not apply.

The district court believed that, because some other defenses remained, Plaintiffs' rights were not truly prejudiced. But that is not how litigation works. Parties are entitled to litigate all the relevant facts and all their defenses. Here, Ocean Springs adjudicated a fact—the existence of slum and blight—and let the time for appeal pass, all without any notice to the owners.

## A. Challenging slum or blight designations is an important defense against eminent domain for urban renewal, and it likely would have succeeded here.

The Mississippi Constitution, like the U.S. Constitution, proscribes the taking of property except for "public use." Miss. Const. art. 3, § 17. Public use is a "judicial question," and, in Mississippi, the courts do not defer to "legislative assertion[s] that the use is public." *Wiggins*, 298 So. 3d at 965.

The Mississippi Supreme Court has held that "urban renewal," *i.e.* slum or blight clearance, is a permissible "public use." *See id.* ("Our jurisprudence dictates that urban renewal is a permissible public use for eminent-domain purposes." (citing *Paulk v. Hous. Auth. of City of Tupelo*,

21

195 So. 2d 488, 490 (Miss. 1967)); s*ee generally* 2A Nichols on Eminent Domain § 7.06[25] n.267 (2025 update) (remediation of slum or blight is a public use) (collecting cases).

A valid slum or blight designation is the prerequisite for any urban renewal activities in Mississippi. Miss. Code § 43-35-13(a); *see also id.* §§ 43-35-3(h)–(k), 43-35-11, 43-35-17(a). Mississippi statutes lay out various conditions that must be met for a valid designation. *See id.* § 43-35-3(h), (i). If there is no valid designation, the city may not take property for urban renewal. *Id.* §§ 43-35-11, 43-35-13(a).

Against this backdrop, challenging slum or blight designations is an important—and often successful—way to prevent condemnation. *Cf. M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1306 (10th Cir. 2018) (noting that "a cause of action to reverse an erroneous blight determination" can "prevent a condemnation proceeding from commencing in the first place"). Owners across the country have successfully challenged faulty designations. *See, e.g., Gabe Realty Corp. v. City of White Plains Urb. Renewal Agency*, 195 A.D.3d 1020 (N.Y. App. Div. 2021); *In re Condemnation by Redev. Auth. of Lawrence Cnty.*, 962 A.2d 1257 (Pa. Commw. Ct. 2008); *Centene Plaza Redev. Corp. v. Mint*

*Props.*, 225 S.W.3d 431 (Mo. 2007); *Gallenthin Realty Dev., Inc. v. Borough of Paulsboro*, 924 A.2d 447 (N.J. 2007); *City of Norwood v. Horney*, 853 N.E.2d 1115 (Ohio 2006); *Boelts v. City of Lake Forest*, 127 Cal. App. 4th 116 (2005); *City of Jacksonville v. Moman*, 290 So. 2d 105 (Fla. Dist. Ct. App. 1974); *Prudential Bldg. & Loan Ass'n v. Urb. Renewal & Cmty. Dev. Agency of Louisville*, 464 S.W.2d 629 (Ky. Ct. App. 1971); *Apostle v. City of Seattle*, 422 P.2d 289 (Wash. 1966).

Here, a challenge to the validity of the blight designation would have been especially strong, as the City's justification for its designation was astonishingly weak. All Ocean Springs offered was a draft letter stating the Ocean Springs city planner's conclusion that the area met the statutory urban renewal criteria and two other letters that said even less. ROA.157–58. The letters contained no facts about the area at all. ROA.158. And because the City's evidence was so weak, Plaintiffs likely would have won their challenge to the City's underlying slum and blight designation. ROA.187.

### B.   In Mississippi, property owners have only ten days to challenge municipal blight designations.

As a general rule, Mississippi residents have two potential ways of challenging the legality of a municipal decision: (1) in an offensive action

23

brought at the time the decision is made, or (2) as a defense to an enforcement action based on the municipal decision, regardless of how long ago that decision was made. However, since *Wiggins*, owners may no longer challenge an underlying blight designation as a defense to condemnation and, instead, are limited to challenging it offensively when the designation is made.

### 1. People in Mississippi may challenge most municipal decisions either offensively or defensively.

The Mississippi Supreme Court has held that any offensive action challenging a municipal decision must be brought pursuant to Miss. Code § 11-51-75, which (1) is generally limited to the municipal record and (2) must be filed within ten days of the municipal decision being challenged. *Newell v. Jones County*, 731 So. 2d 580, 582 (Miss. 1999). That applies to all municipal decisions, including contract or employment decisions, *id.*, decisions regarding a city's provision of utility services, *Heritage Hunter Knoll, LLC v. Lamar County*, 356 So. 3d 91, 96 (Miss. 2023), and decisions granting zoning variances, *Tilghman v. City of Louisville*, 874 So. 2d 1025, 1026 (Miss. Ct. App. 2004).

Notwithstanding that requirement, Mississippians may still challenge the legality of a municipal decision as a defense to an enforcement action based on that decision—long after that decision was made. For example, consider *Crook v. City of Madison*, 168 So. 3d 930 (Miss. 2015). There, the City of Madison enacted a rental-inspection ordinance in 2008, then amended it in 2010. *Id.* at 932. Five months after the amendment, Mr. Crook "was arrested for having rented [his property] . . . in violation of [the rental-inspection ordinance]," and he was convicted in municipal court. *Id.* at 934. The Mississippi Supreme Court reversed that conviction, finding Madison's rental-inspection ordinance "facially unconstitutional." *Id.* at 939. To be sure, Mr. Crook could have invoked § 11-51-75 to challenge that ordinance when it was passed (or amended); nevertheless, he was not precluded from arguing against its validity in a defensive posture.

Here, the district court was concerned that a ruling in Plaintiffs' favor would require notice of proposed changes to zoning laws. ROA.679. But unlike blight designations, owners can challenge zoning enforcement long after the ten days have expired. Consider *Mayor of Clinton v. Welch*, 888 So. 2d 416 (Miss. 2004). The Welch family moved to Clinton in late

1996 and built a tree house in their front yard "[s]hortly thereafter." *Id.* at 417–18. Then, in 2002, Clinton asserted that the tree house was unlawful, and "[t]he Welches [were] charged with violation of the City's Ordinance which was enacted in 1997." *Id.* at 419.

The Mississippi Supreme Court found that the relevant section of the ordinance was unconstitutionally vague, invalidating its enforcement. *Id.* at 423 ("With these definitions, the public is left to either guess what is an 'accessory building,' and what is not, or appeal to the unfettered discretion of a City official who, on an ad hoc basis, decides the 'accessory building' *du jour*."). Again, the Welches (and a host of other property owners) could have raised that argument, via Miss. Code § 11-51-75, to challenge Clinton's ordinance upon its enactment in 1997; nevertheless, that did not prevent them from arguing against the ordinance's enforcement against themselves, five years later.[3]

---

[3] Technically speaking, the Welches' case was a § 11-51-75 action, but it was an action challenging the later enforcement, not a § 11-51-75 action challenging the original enactment. *Welch*, 888 So. 2d at 418. The Welches' case was effectively a defense to the ordinance's enforcement, and the point remains that their argument challenged the validity of the ordinance itself—an argument that they (and others) could have raised years earlier. *Id.* at 427 (holding that the ordinance was unconstitutionally vague as applied).

*Crook* and *Welch* are not unusual. Mississippi caselaw is replete with examples of people who, defending themselves against an ordinance's enforcement, were allowed to challenge the ordinance's validity long after its passage. *See, e.g.*, *Archie v. City of Canton*, 92 So. 3d 1279, 1282 (Miss. Ct. App. 2012) (criminal defendant "properly preserved his claims regarding the unconstitutional nature of Canton's parade ordinance," which was passed well before its enforcement against him); *Carpenter v. City of Petal*, 699 So. 2d 928, 934 (Miss. 1997) (finding a zoning amendment, which was enacted years earlier, to be "arbitrary and unreasonable, and therefore unconstitutional"). That makes sense. While it might be fair in certain circumstances to require that any challenge to a municipal decision be made at the time of the decision, *see, e.g.*, *Foster v. Edwards*, 61 So. 3d 960, 961 (Miss. Ct. App. 2011) ("[a] group of concerned citizens" sought to invalidate municipal expenditures), it would be grossly unjust to prevent a defendant from challenging the underlying legality of an enforcement action against him.

### 2. *Wiggins* created a unique exception for condemnation proceedings based on a blight designation.

*Wiggins*, however, created an exception for condemnation proceedings predicated on an urban-renewal-area designation. Mr. Wiggins, like the people in *Crook*, *Welch*, *Archie*, and *Carpenter*, challenged the legal basis of an enforcement action against him. *See Wiggins*, 298 So. 3d at 964 (explaining Wiggins "assert[ed] that Clinton lacked legal authority to take his property" in "his response to Clinton's complaint"). Specifically, he argued that Clinton's declaration of an urban renewal area failed to "conform with the [statutory] definitions of an urban-renewal area," *id.*, meaning that Clinton could not exercise eminent domain powers within that area for the purpose of urban renewal.

The Mississippi Supreme Court refused to hear that defense. As here, the blight designation in *Wiggins* had been issued "without giving [Wiggins] notice or an opportunity to be heard." Reply Br., *Wiggins v. City of Clinton,* No. 19-CA-00010, 2020 WL 1689904, at *10 (Miss. Jan. 9, 2020). Even so, the court held that Wiggins had only ten days from that notice-free blight designation to challenge it. Because he failed to do so

28

and instead tried to challenge the designation as a defense to the city's later condemnation action, the court rejected his arguments as "untimely." *Wiggins*, 298 So. 3d at 965.

## II. By creating the blighted area designation surreptitiously, Ocean Springs deprived Plaintiffs of their property rights without due process of law.

Plaintiffs plainly have property interests at stake. They own real property in the area the City designated as slum and blighted. They also had a statutory right to appeal that decision. But Ocean Springs made its designation and allowed the appeal period to lapse with no notice to Plaintiffs or other owners. Due process requires notice such that people have a meaningful opportunity to be heard to protect their interests. Ocean Springs did not provide that here.

### A. Plaintiffs have property interests in retaining their properties and in their statutory right to appeal the City's slum designation.

The first question in a procedural due process challenge is whether the plaintiffs have a property (or liberty) interest. *James v. Cleveland Sch. Dist.,* 45 F.4th 860, 864 (5th Cir. 2022). Plaintiffs' core property interest is, of course, the real property they own and their desire to retain that ownership. As explained above, the awkward combination of the Mississippi statutes and *Wiggins* effectively extinguishes owners'

29

objection to the blight designation if it is brought as a defense in the eminent domain action itself. Instead, owners' only option is to bring a § 11-51-75 action shortly after the passage of the blight resolution. Plaintiffs' property interests therefore include both the *right to defend themselves* against an eminent domain action by arguing that there is no valid slum or blight designation and the *right to bring that argument as a separate statutory action* under § 11-51-75.

The district court concluded that Plaintiffs did not have protected property interests. It dismissed the first of these interests, holding that because Plaintiffs could still assert other defenses in an eminent domain proceeding, it wasn't important that they lost the ability to challenge the validity of the slum and blight designation. ROA.678–79. And it held that Plaintiffs did not have a property interest in the statutory cause of action under § 11-51-75 because, primarily, Mississippi has not separately codified "a specific cause of action to challenge a slum or blight designation." ROA.684. The district court erred on both counts.

> **1.    Plaintiffs have an interest in retaining ownership of their properties and, therefore, in their defenses against eminent domain.**

Ownership in real property is squarely protected by the Due Process Clause. *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48–49 (1993); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012). Although a slum or blight designation, standing alone, is not an outright taking of an owner's property, it is a necessary precondition to the government's exercise of eminent domain over the property as part of an urban renewal plan. *See* Miss. Code §§ 43-35-11, 43-35-13(b), 43-35-15(c). And because urban-renewal-area designations do not expire, owners who do not challenge a designation within ten days of its passage suffer a significant—and potentially permanent—impairment to their rights. *Wiggins*, 298 So. 3d at 965; *see also M.A.K.*, 897 F.3d at 1311 (suggesting that blight designation that lasted for a maximum of seven years burdened owner's real property interests).

The premise of the Supreme Court's due-process jurisprudence is that people have the right to be heard—to defend themselves—against adverse government action. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319,

333 (1976) ("The right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society." (cleaned up)); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

For due process analysis, the interest in one's property *is* the right to defend oneself against its deprivation. It makes no sense to say that people have property interests in their property but not in the opportunity to defend those interests. In whatever manner a state chooses to structure its eminent domain and urban renewal laws, it must afford owners an opportunity to defend themselves.

In Mississippi, the urban-renewal-area designation underpins any eminent domain action where the purported "public use" is "urban renewal." Without it, cities cannot use eminent domain for "urban renewal." Miss. Code §§ 43-35-13(a), 43-35-17(a). *Wiggins* has bifurcated the eminent domain proceedings so that an owner must litigate this vital

issue in a separate, earlier action. Being able to litigate the validity of the urban renewal area can be the difference between keeping one's property and losing it. Plaintiffs here had a property interest in this important defense.

>    **2.    Plaintiffs have an interest in their statutory right to challenge the City's blight designation under Miss. Code § 11-51-75.**

Because Mississippi forces property owners to litigate their challenge to slum and blight designations in a separate action, Plaintiffs have a protected Fourteenth Amendment interest in their statutory right to bring that action. It is well established that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982); *see also Tulsa Pro. Collection Servs., Inc. v. Pope,* 485 U.S. 478, 485 (1988) ("Appellant's interest is an unsecured claim, a cause of action against the estate for an unpaid bill. Little doubt remains that such an intangible interest is property protected by the Fourteenth Amendment."). And when a state creates "established adjudicatory procedures" to settle property rights, the Due Process Clause "prevent[s] the State[] from denying potential litigants" the right to use those

procedures "when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed right[s].'" *Logan*, 455 U.S. at 429–30 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971)).

As other courts have recognized, the deprivation of a property owner's one opportunity to challenge an element of a future taking requires due process. *See Brody v. Village of Port Chester*, 434 F.3d 121, 129 (2d Cir. 2005) ("[W]here, as here, a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane* and its progeny."); *Harrison Redev. Agency v. DeRose*, 942 A.2d 59, 90 (N.J. Super. Ct. App. Div. 2008) (owners preserve right to challenge blight designation unless "the municipality . . . has provided the property owner with contemporaneous individual written notice").

Indeed, it was the plaintiffs' interest in their statutory right to challenge a blight designation that triggered procedural due process protections in *Brody*, *M.A.K.*, and *DeRose*. *Brody*, 434 F.3d at 129; *M.A.K.*, 897 F.3d at 1317–18; *DeRose*, 942 A.2d at 90. Of those cases, *M.A.K.* is the most on point. There, the Tenth Circuit explained that the state-created framework to challenge a blight designation conferred a

34

property interest because it placed substantive limits on state officials'
exercise of their discretion. *M.A.K.*, 897 F.3d at 1310–11. These
substantive limits came from two provisions working together: (1) the
cause-of-action provision that allowed property owners to challenge a
blight designation, and (2) the underlying definition of blight in Colorado
law. *Id.*

This statutory framework empowered Colorado courts to review
contested blight designations for compliance with the state's definition of
blight. *Id.* at 1311. In conducting this review, a court could not "deny
relief for no reason at all[.]" *Id.* at 1311 (cleaned up). Instead, it had to
"review the city council's application of the statutory factors" that
establish blight in the state's definition. *Id.* And if the city council's
application of the statutory factors constituted an abuse of discretion, the
property owner "would be *entitled* to a favorable outcome." *Id.* This
entitlement, the Tenth Circuit found, marks the difference between "a
property right" and "an empty formality[.]" *Id.*

Mississippi's statutory framework is similar. Like Colorado,
Mississippi places substantive limits on officials' discretion to designate
an urban-renewal area: The area must be "a slum area or a blighted area

or a combination thereof," meaning that it has a "predominance" or a "substantial number" of various enumerated problems that make it "a menace" or "detrimental" to the "public health, safety, morals, or welfare" Miss. Code § 43-35-3(h), (i), (k). Also like Colorado, Mississippi gives owners a statutory cause of action to challenge an urban renewal area for failing to meet those substantive criteria. *See supra* Part I. And as in Colorado, this cause of action is not an "an empty formality" that allows a court to "deny relief for no reason at all." *Cf. M.A.K.*, 897 F.3d at 1311 (cleaned up). The city must meet a set of explicit statutory criteria. If an owner shows that the area designation does not meet the criteria, she will succeed. *Id.* (cleaned up); *see also supra* Part I.A. And, under both states' laws, a blight determination is "not a complete taking . . . but it slates the property for possible condemnation in the future." *M.A.K.*, 897 F.3d at 1306.

Therefore, as in *M.A.K.*, Plaintiffs have a protected interest in their statutory cause of action to challenge an urban renewal area under Miss. Code § 11-51-75.

**B.   Due process requires individual, mailed notice of the opportunity to challenge the slum and blight designation.**

When an individual's property interests are threatened, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see also Logan*, 455 U.S. at 429–30. It is unsurprising, then, that lower courts faced with urban renewal frameworks like Mississippi's have found that they violate property owners' due process rights. *See Brody*, 434 F.3d at 129; *M.A.K.*, 897 F.3d at 1319; *DeRose*, 942 A.2d at 62–63.

Affected owners are entitled to a meaningful opportunity to be heard in opposing the designation of an urban renewal area. Whether a state forces property owners to raise that opposition as a defense to eminent domain or under a statutory cause of action to challenge the designation, due process requires notice.

**1.    In any forum the state prescribes for owners to present their opposition to the deprivation of property, due process requires a meaningful opportunity to be heard.**

When courts talk about a meaningful opportunity to be heard, that means a meaningful opportunity to oppose the "deprivation of life, liberty or property[.]" *Mullane*, 339 U.S. at 313. Usually, that comes in the form of a defense, as in a criminal or civil enforcement action. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690–91 (1986) (allowing defendant to challenge the validity of a prior confession); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (plurality op.) (citizen determined to be an "enemy combatant" was constitutionally entitled to "receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker"); *see also id.* at 553 (Souter, J., joined by Ginsburg, J., concurring in part) (same); *Greene v. Lindsey,* 456 U.S. 444, 455 (1982) (tenants facing eviction must be allowed meaningful opportunity "to present a defense"); *Bell v. Burson*, 402 U.S. 535, 542 (1971) (driver facing license suspension must be allowed to challenge "an element essential to the [suspension] decision").

Due process also requires notice when someone's opportunity to retain their property or liberty comes in the form of an affirmative action rather than a defense. *See, e.g.*, *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (people subject to deportation on the basis that they are an "alien enemy" must receive notice allowing them a meaningful opportunity to challenge that they are "in fact an alien enemy"; where process to make this assertion is habeas corpus, notice must be sufficient to allow individual to bring habeas action); *City of New York v. N.Y., New Haven, & Hartford R.R. Co.*, 344 U.S. 293, 297 (1953) (mailed notice of bankruptcy proceeding is required in order to grant creditors "a reasonable opportunity to be heard"); *Tulsa Pro. Servs.*, 485 U.S. at 488 (state must mail notice to potential claimants in probate proceedings because "the running of Oklahoma's nonclaim statute is accompanied by sufficient government action to implicate the Due Process Clause").

> ### 2. Due process mandates individual notice whenever feasible.

Courts overwhelmingly hold that due process requires individual, mailed notice. The cases focus on the inadequacy of published notice, but here, Ocean Springs did not provide even that.

Notice by publication is constitutionally insufficient when the government attempts to deprive an individual of a property right and that individual's address is known or readily ascertainable to the government. *See Tulsa Pro. Servs.,* 485 U.S. at 491 ("[I]f appellant's identity as a creditor was known or reasonably ascertainable, then the Due Process Clause requires that appellant be given notice by mail or other means as certain to ensure actual notice." (cleaned up)); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition[.]"); *Greene,* 456 U.S. at 455 ("Notice by mail in the circumstances of this case would surely go a long way toward providing the constitutionally required assurance that the State has not allowed its power to be invoked against a person who has had no opportunity to present a defense despite a continuing interest in the resolution of the controversy."); *Schroeder v. City of New York,* 371 U.S. 208, 212–13 (1962) ("The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and

whose legally protected interests are directly affected by the proceeding in question.").

### 3. The City's "notice" was inadequate.

Following Mississippi statutes, Ocean Springs gave no notice at all. It gave no individual, mailed notice to Plaintiffs of the fact that it was considering a slum and blight designation, of the upcoming public hearing where owners could submit evidence against the proposed designation, of the fact that a slum or blight designation means that there is a public use for future condemnations, of the resolution adopting the slum and blight designation, or of the time limit for challenging the designation in court. ROA.186–87. Ocean Springs did not even *publish* notice of the April 4 public hearing or the resolution adopting the slum and blight designation; its sole "notice" was posting the agenda on the website and the maps in City Hall. ROA.156.

At a bare minimum, due process required individual, mailed notice of (1) the public hearing, with sufficient notice that Plaintiffs could prepare to present evidence at the hearing, (2) the passage of the resolution finding slum and blight, and (3) the ten-day limit for filing a challenge. First, people need notice of the public hearing, because that is

their only chance to present evidence that their property is not blighted (and therefore categorically immune from eminent domain for urban renewal). Indeed, Plaintiffs alleged that they would have attended the hearing and presented evidence had they known about it. ROA.166–67; ROA.169; ROA.171–72; ROA.174; ROA.180; ROA.184; ROA.187.

Second, people need notice of the city's decision, because that is their only notice that the city has deemed the evidence sufficient to justify the finding of blight, and it is the event from which the ten-day appeal period runs. Plaintiffs alleged they would have appealed the designation of their area as slum and blighted had they known about it. ROA.166; ROA.169; ROA.171; ROA.174; ROA.180; ROA.184.

Finally, due process requires notice of the opportunity to appeal, because the § 11-51-75 appeal is the only way to obtain judicial review of the city's otherwise-binding factual determination. Once again, Plaintiffs have alleged that, had they known about the designation and had they known it could have been appealed, they would have done so—and they likely would have succeeded in their challenge. ROA.166–67; ROA.169; ROA.171–72; ROA.174; ROA.180; ROA.184; ROA.187.

If Ocean Springs wanted owners to have enough information to meaningfully challenge the designation of their neighborhood as blighted, this is assuredly *not* the method it would have adopted. *See Mullane*, 339 U.S. at 315 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

### 4.    *M.A.K.*, *Brody*, and *DeRose* are persuasive.

In three similar cases considering challenges to the lack of notice of blight or redevelopment designations, courts found that due process required notice.

### a.    *M.A.K. Investment Group, LLC v. City of Glendale*

In *M.A.K.*, the Tenth Circuit found that Colorado's urban-renewal statutes provided owners insufficient notice of their statutory right to challenge a blight determination when it was passed. 897 F.3d at 1319. As noted above, Mississippi's statutory scheme shares key similarities with Colorado's. *Supra* Part II.A.2. But when it comes to notice, Mississippi's statute is even more deficient than Colorado's was.

First, Colorado's statute provided at least some notice relating to blight designations. It required municipalities to provide mailed,

individual notice when beginning a study of the area to determine if it was blighted—though it did not require individual notice of the hearing regarding the blight determination, or that a blight determination had triggered the appeal period.[4] *M.A.K.,* 897 F.3d at 1311–12. By contrast, Mississippi's statute requires no individual notice of a blight study, no notice of the blight hearing, and no notice that a slum or blight determination has been issued, triggering owners' deadline to appeal.

Second, the consequences of a blight determination are more severe in Mississippi than in Colorado. Most importantly, Colorado's statute seems to allow owners to challenge an underlying blight determination "if and when a condemnation proceeding begins," unlike Mississippi. *Id.* at 1317. Beyond that, in Colorado, municipalities may begin condemnations for seven years after the blight determination, *id.,* whereas in Mississippi, "slum and blighted designations never expire," ROA.642, so the threat of condemnation looms indefinitely. In both states, evidence challenging the proposed blight designation must be

---

[4] Colorado has since amended its urban-renewal statute to require individual, mailed notice of both the hearing on a blight designation and the designation's passage. *See* Colo. Rev. Stat. § 31-25-107(1)(b).

submitted to the municipality before it makes its decision—but, in Colorado, owners then have thirty days to challenge that decision in court. *M.A.K.*, 897 F.3d at 1307. Mississippi owners have only ten days.

Nevertheless, applying *Mullane*, the Tenth Circuit concluded that "due process required Glendale to provide M.A.K. with direct notice of the adverse blight determination." *Id.* at 1312. As the court explained, without notice, "M.A.K. was left unaware of the potentially looming condemnation action, and so had little reason to even investigate whether it could challenge the blight determination that authorizes that action." *Id.*

The Tenth Circuit rejected the idea that the blight determination was merely a legislative decision and thus notice was not necessary. *Id.* at 1313–17. Relying on *Mullane*, *Mennonite Board*, and *Tulsa Professional Services*, the court concluded that, when the government takes an action that starts a clock ticking (like passing a blight designation), due process requires individual notice. *Id.* at 1317.

### b. *Brody v. Village of Port Chester*

In *Brody*, the Second Circuit reached the same conclusion. 434 F.3d at 129. There, New York's statutes, like Mississippi's, did not require

notice, and Brody challenged Port Chester's failure to notify him of his opportunity to challenge public use.[5] *See id.* at 125–26. New York, like most states, requires a public hearing during which the government considers whether an area is in need of urban renewal. *See id.* at 124. After the hearing,[6] the municipality approves a "determination and findings" and finds that taking property in the area will be for public use. *Id.* at 125. In *Brody*, the municipality published notice of the determination and findings but did not mail notice to affected owners. *Id.* And in New York, the passage of the determination and findings triggers an exclusive 30-day window for legal challenge. *Id.*

The Second Circuit relied heavily on the fact that New York owners, like Mississippi owners, had a single opportunity to bring their legal challenge. *Id.* at 128 (holding that due process requires individual notice

---

[5] Like Colorado, New York changed its statutes to require individual, mailed notice of the hearing and the determination and findings. *See* N.Y. Em. Dom. Proc. Law §§ 202(C), 204(C).

[6] Although it was not required under New York law at the time, Port Chester sent notice of the hearing to Brody. *Brody*, 434 F.3d at 124. Thus, the owners in both *M.A.K.* and *Brody* received notice of the public hearing, unlike the owners here. Both circuits nonetheless found that due process required individual notice of the post-hearing determination that triggered the window for review.

"of the exclusive period in which to challenge public use"). As the court explained, finding that "no right to notice or a hearing attaches to the public use requirement would be to render meaningless the court's role as an arbiter of a constitutional limitation on the sovereign's power to seize private property." *Id.* at 129. So when "a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane* and its progeny." *Id.* The Second Circuit thus reversed the district court's conclusion that New York's scheme afforded owners constitutionally sufficient notice. *Id.*

### c.    *Harrison Redevelopment Agency v. DeRose*

In *DeRose,* the New Jersey Superior Court Appellate Division invalidated that state's no-notice blight scheme. 942 A.2d at 90. As in Mississippi, New Jersey cities must hold a public hearing to consider whether an area meets the blighted area definition under state law.[7] *Id.* at 81. Unlike in Mississippi, however, New Jersey cities must give notice (by publication) of that hearing. *Id.* After the hearing, the city approves

---

[7] New Jersey calls this an area "in need of redevelopment," but the courts have recognized this as simply another name for blight. *See DeRose*, 942 A.2d at 73 n.11.

the blight designation. *Id.* at 80. Owners then have 45 days from that resolution to challenge the designation, though the city (at the time) did not need to inform them that the resolution was passed. [8] *Id.* at 82.

Most owners in *DeRose* did not receive individual notice of the city's blight designation. *Id.* But when they tried to challenge the designation more than 45 days later, as a defense to an eminent domain proceeding, the trial court dismissed their claims as untimely. *Id.* at 74–75. The New Jersey appellate court reversed, finding that due process required individual notice of the exclusive period to challenge the blight designation. *Id.* at 86 (noting that the statute failed to "fairly inform[]" owners of the effect of the blight designation on future condemnations, the time limits for contesting the blight designation, or the resolution that triggers the 45-day limit). The court then construed the statute to either (1) require adequate notice, or (2) if notice is not given, to allow

---

[8] Like Colorado and New York, New Jersey changed its statute and now provides notice of the blight resolution. *See* N.J. Stat. § 40A:12A-6.

owners to challenge blight in the later condemnation proceeding.[9] *Id.* at 90.

### III.  The district court's contrary reasoning lacks merit and invites a circuit split.

The Tenth and Second Circuits reached consistent results. Both found that owners must be able to challenge blight designations and that due process requires individual notice. Both found the owners had a protected property interest. Both rejected newspaper notice as sufficient for due process. And both rejected the argument that the legislative nature of the city's decisionmaking made individual notice unnecessary.

The court below attempted to distinguish this case from *M.A.K.* and *Brody*. Its purported distinctions, however, are constitutionally irrelevant. If this Court affirms, it will split with the Tenth and Second Circuits. It should not do so. The *M.A.K.* and *Brody* decisions correctly held that the cities violated the owners' due process rights, just as Ocean Springs has violated Plaintiffs' rights here.

---

[9] Unfortunately, this Court cannot rule that Mississippi courts must hear blight challenges at the time of the taking if there was no individual notice. *Wiggins* precludes that construction. 298 So. 3d at 964–65.

A.   **The district court's decision is in tension with the Tenth Circuit in finding that the availability of other defenses rendered the notice-free blight designation constitutional.**

The district court did not directly discuss Plaintiffs' interest in the ownership of their real property or their concomitant interest in its defense. *Compare* ROA.305–06 (Plaintiffs asserting these interests in opposition to the City's second motion to dismiss), *with* ROA.679–84 (district court discussing only Plaintiffs' alternative claim that they have a protected interest in their statutory right to invoke § 11-51-75). But the court's discussion of *Wiggins* expresses its belief that, since property owners retain some *other* defenses against eminent domain, losing the defense of an invalid blight designation is not constitutionally significant. ROA.678–79.

In *M.A.K.*, the Tenth Circuit reached the opposite conclusion. The court held that due process required notice even though, unlike in Mississippi, owners could fully challenge the blight designation in a defense to the eminent domain proceeding. Although its analysis came in the context of the right to the statutory cause of action (not the defense), *M.A.K.*, 897 F. 3d at 1317, the court explained that being able to raise lack of blight as a defense in condemnation does not fully remedy the

burdens of the blight determination itself. "[A] condemnation proceeding, no matter how thorough, cannot clean up for a lost opportunity to challenge the blight determination that came before it." *Id.* The Tenth Circuit required notice even though owners fully retained their objection to the blight determination in an eventual condemnation proceeding. The district court below held that due process did not require notice as long as owners retained any defense at all.

Because owners retain some defenses in a condemnation action, particularly one that falls under the general category of "public use," the district court found owners did not need notice of the adjudication of the validity of the blight determination. ROA.678. The court pointed out that, "in *Wiggins*, the Mississippi Supreme Court did not allow Clinton to exercise its power of eminent domain *purely* because the property was designated as blighted." *Id.* (emphasis added); *see also id.* (pointing out that a valid blight designation does not "automatically" satisfy the public use requirement).

This line of reasoning starts in exactly the wrong place. The question is not whether the city automatically wins if there is a valid

slum or blight designation; it's whether the city automatically loses if there is *not* a valid designation.

In fact, if the court had allowed Wiggins to show that the area did not meet the blight definition (and if he had been successful in that showing), he would have won in two ways. First, the *Wiggins* court found the blight designation completely dispositive on the question of authority to condemn, so Wiggins would have won on that issue. 298 So. 3d at 964–65 ("Wiggins[] first asserts that Clinton lacked legal authority to take his property because its urban-renewal area did not strictly conform with the definitions of an urban-renewal area under Mississippi Code Section 43-35-3[.] . . . Wiggins's objection was untimely."). Second, he would have won on public use because, without a valid blight designation, there would be no public use. *See id.* at 965 (declining to consider Wiggins's untimely public-use arguments related to the blight designation); Miss. Code §§ 43-35-13(a), 43-35-17(a). The state supreme court's remark, cited by the district court at ROA.678, that the burden is on the city to show public use is immediately followed by: "Here, the averred public use was urban renewal. Our jurisprudence dictates that urban renewal is a

permissible public use for eminent-domain purposes." *Wiggins*, 298 So. 3d at 965.

The public use in urban renewal is eliminating blight. *Paulk*, 195 So. 2d at 490. "Public use" in this context has two elements: There has to be blight, and the city has to be eliminating it. *See id.* at 489–90. Thus, the district court is right that the blight designation *alone* doesn't establish public use, in the sense that the particular condemnation must help eliminate the blight. But in *Wiggins*, the City of Clinton cleared the extremely low hurdle that remained by saying that it would transfer the property to a private party who would redevelop it into a commercial enterprise. 295 So. 3d at 965 n.3. Sometimes cities fail to do even that much. *See Morley v. Jacksonville Redev. Auth.*, 632 So. 2d 1284, 1289 (Miss. 1994) (city introduced no evidence of what it planned to do with the property). But plainly an owner wishing to keep her property would prefer to say "there is no public use" rather than "even though I can't challenge the underlying public use, you forgot to say that you would achieve it by building something else on my property." After *Wiggins*, that stronger public use argument has been decisively adjudicated before the eminent domain proceeding begins.

Moreover, even if a city *does* lack a specific-enough plan for a property, it can correct that error and try again. *See, e.g.*, *Morley*, 632 So. 2d at 1291 (remanding for more detail on future plans for the condemned property); Miss. Code § 43-35-13(e) (city can amend urban renewal plan at any time).

But the blight designation will remain—beyond challenge—unless the city rescinds it. All the while, property owners' security in their land is profoundly and intractably impaired.

### B. The district court broke with the Second and Tenth Circuits in finding no property interest in the statutory cause of action to challenge the City's designation of the urban renewal area.

Although Mississippi explicitly allows property owners to challenge blight designations under § 11-51-75, the court below held that Plaintiffs do not have a protected interest in that cause of action. ROA.684. In doing so, the court flagged several perceived differences between this case and the cases in which courts have held that a statutory right to challenge a blight designation gives rise to notice requirements. Most of these differences are irrelevant; those that remain are incorrect.

*First*, the district court explained that unlike in *Brody*, *M.A.K.*, and *DeRose*, Mississippi has not passed a specific statute that allows property

owners to challenge blight designations. ROA.682. And because property owners must rely on § 11-51-75 (a general appeals statute) to mount such a challenge, the court concluded that no protected property interest exists in the cause of action that statute confers. ROA.682. But separate codification of Plaintiffs' cause of action within the Mississippi Code is irrelevant; it is a cause of action all the same.

*Second*, the court found that, unlike the statute in *M.A.K.*, a challenge invoking § 11-51-75 does not prescribe a standard of review, or a "list of factors," for courts to consider when reviewing a blight designation. ROA.682–83. That is incorrect. Just because § 11-51-75's text does not *itself* prescribe a particular standard of review does not mean that no standard exists. In § 11-51-75 cases, courts derive the appropriate standard from the underlying substance of the claims. *See, e.g.*, *Baymeadows, LLC v. City of Ridgeland*, 131 So. 3d 1156, 1159 (Miss. 2014) ("This Court will not reverse the decision of the municipality unless its decision is arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis. Legal errors are subject to a *de novo* review." (cleaned up)). Whether a decision was "illegal" can, of

course, vary depending on the constitutional and statutory rights at issue.

Here, an urban renewal area is "illegal" if the municipality cannot show that it satisfies the criteria set by Miss. Code § 43-35-3. For example, a "slum" area must have a "predominance" of certain factors, like dilapidation, that are "conducive to" conditions like "ill health" and are "detrimental" to public health and safety. *See id.* § 43-35-3(h). An owner opposing a slum designation could show that fewer than half of the properties had the listed characteristics, that the conditions were not conducive to the statutory conditions, or that there was no detriment to public health and safety. The blight definition has the same structure, but with different factors. *See id.* § 43-35-3(i). In short, "slum" or "blight" can be established or disproved by evidence.

*Third*, the court noted that the urban renewal area in this case was larger than those in *Brody* and *M.A.K.* ROA.680. This, too, is irrelevant. The size of an urban renewal area does not affect its validity or its susceptibility to challenge in court; regardless of size, it must satisfy statutory standards. *See* Miss. Code § 43-35-3. Affected owners' property interest in exercising their statutory right to challenge an urban-

renewal-area designation, then, cannot depend on the size of the urban renewal area they hope to challenge.

*Fourth*, the court found that, because Plaintiffs did not allege that their property values decreased due to the April 4 blight designation, they lack a protected interest in the § 11-51-75 cause of action. ROA.683–84. This confuses a property interest in the value of one's property with a property interest in a statutory challenge to prevent the taking of one's property. Although the court relied on *M.A.K.* to suggest that a diminution in property values bears on the existence of an interest in the cause of action, ROA.683–84, the Tenth Circuit held just the opposite, *M.A.K.*, 897 F.3d at 1311 (discussing property values and concluding that "the extent to which the blight determination burdens M.A.K.'s real property does not matter when determining if a property interest exists in the *cause of action*"). Thus, this distinction is also irrelevant.

*Fifth*, and finally, the district court suggested that Plaintiffs should wait until the City actually seeks to acquire their properties through eminent domain before bringing their procedural due process claim. ROA.680 (noting that, in *Brody*, the property owner brought his due process claims at the time of the taking). Depending on the City's actions,

this may ask the impossible. Plaintiffs' due process claim centers around the City's failure to notify them of a slum and blight designation. Because this claim arises out of 42 U.S.C. § 1983, it is subject to a 3-year statute of limitations. *See Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). But in Mississippi, blight designations never expire. *See* ROA.642.

This poses a problem: If the district court is correct, a city could immunize itself from any due process challenge to its blight procedures by simply waiting three years before taking any property in an urban renewal area—by then, an owner's § 1983 suit would be untimely. Once an owner discovers he has lost the adjudication of whether his area is blighted, as Plaintiffs here did, he cannot simply wait. Like the plaintiff in *M.A.K.*, Plaintiffs here learned about the blight designation before the City began any eminent domain action. *See* 897 F.3d at 1317. The timing of the eminent domain action does not dictate whether Plaintiffs' rights were violated.

In sum, § 11-51-75 confers a protected property interest on Plaintiffs because it—combined with Mississippi's statutory definition of "[s]lum" and "[b]lighted area" in § 43-35-3(h) and (i)—subjects local

governments' blight designations to judicial review for compliance with state-imposed statutory standards.

### C. The district court broke with the Second and Tenth Circuits in portraying the City's slum and blight designation as a solely "legislative" action.

At bottom, the district court's decision rests on the holding that "the City's April 4th Resolution designating Plaintiffs' properties as slum or blighted was a legislative decision[.]" ROA.672. And because it found that the resolution was legislative—rather than adjudicative—the court concluded that "Plaintiffs 'received procedural due process by the legislative process itself and they have no right to individual attention.'" ROA.672 (quoting *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986)).

The April 4 resolution found that the area in which Plaintiffs' properties sit was slum and blighted. ROA.186. After ten days, this became an established fact that, for purposes of any future condemnation action, had been conclusively settled. *See Wiggins*, 298 So. 3d at 965. Determining facts in a lawsuit is quintessentially adjudicative. Ordinarily, if a fact is in dispute, the parties can each introduce evidence about that fact, and the judge or jury will decide who is right. With slum

and blight, however, a city can pass legislation declaring a fact in secret and bar owners from challenging it in litigation.

This sort of legislation differs from laws that set general rules. If a municipality bans bicycles or limits land uses in a zone, parties can still adjudicate facts later and challenge laws that are applied to them. *See supra* Part I.B.1. But if a municipal resolution declares a fact that, under state law, cannot be attacked in future litigation, that is an adjudication—affected owners must have an opportunity to contest that fact.

The Supreme Court laid out the test for legislative versus adjudicative acts in *Texaco, Inc. v. Short*, 454 U.S. 516, 533–34 (1982), which considered a challenge to a statute that extinguished mineral rights ownership if not exercised for 20 years. The Court held that a self-executing act does not require notice, but if the loss of rights must be triggered by a determination, then due process does require notice. *Id.* Thus, the passage of the legislation did not require notice because it operated without any triggering event. *Id.* at 537–38. But the actual proceeding brought by the owner of real property to extinguish another party's mineral rights *did* require notice, because due process entitled

the owner of the mineral rights to contest whether he met the statutory criteria to retain ownership. *Id.* at 533–34. In Mississippi, the opportunity to dispute the application of statutory criteria occurs at the public hearing and § 11-51-75 challenge—not in a later proceeding. That means notice is required.

Later cases bear this out. For example, the district court relied on *County Line Joint Venture v. City of Grand Prairie*, 839 F.2d 1142 (5th Cir. 1988), for the proposition that due process does not require notice of the passage of a land-use law. But that case supports Plaintiffs. There, Grand Prairie passed a law revoking all special use permits that had not been used for more than six months. Following *Texaco*, this Court held that the city did not need to give the owner individual notice of the revocation, which was merely a legislative act. *Id.* at 1146–47. That makes sense. The owner wasn't entitled to notice of the passage of a law that established general rules for a category of property. Similarly, Plaintiffs here were not entitled to notice of the passage of the urban renewal laws, which established the categories of slum and blight.

*County Line* does not, however, stand for the proposition that the government can forever preclude property owners from challenging an

action that affects their protected interests by simply refusing to tell them about it. In *County Line* itself, this Court explained that the property owner retained the right to challenge the constitutionality of the city's law and to contest whether the owner fit into the category of special-use-permit recipients who let their rights lapse. *See id.* at 1143, 1147. So although the owner wasn't entitled to individual notice at the time of the act's *passage*, it could make all the substantive arguments it wanted to make in a later proceeding for which it *did* receive notice. *Id.* at 1147.

Mississippi property owners whose properties have been blighted are entitled to a similar day in court. *See Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 887–93 (5th Cir. 1989) (government cannot escape its constitutionally mandated burden to give notice by passing statutes that shift the burden to the property owner). Thus, while Plaintiffs concede due process did not require notice of the passage of Mississippi's urban renewal laws writ large, they were entitled to notice of the proceeding in which the City applied those laws to *their particular properties*. That was the only proceeding in which Plaintiffs could ever have adjudicated or appealed the City's designation. Under *County Line*, owners must be allowed to litigate those questions at some point. 839

F.2d at 1147. Because they never got notice, Plaintiffs never had that opportunity.

The district court did not engage with the self-executing test laid out in *Texaco*. *See* ROA.670–74. Instead, it found that—because the April 4 resolution designated 131 parcels as slum and blighted—it involved "generalizations concerning a policy or state of affairs" rather than facts "that relate to particular individuals or situations." ROA.670–72. This inquiry misses the mark.

While the number of people harmed by a government decision may sometimes be a useful proxy for whether the law affects specific people's rights, it cannot be the only metric to determine whether that decision is legislative or adjudicative. That's because it is not the scope of the government's deprivation that triggers due process; it's the "*nature* of the interest at stake." *Goss v. Lopez*, 419 U.S. 565, 575–76 (1975) (emphasis added) (citation omitted). And whenever the property interest at stake is more than de minimis, pre-deprivation process is due. *Id.* at 576. Otherwise, legislation that harms few people in a small way would give rise to notice requirements, while legislation that harms a much larger group in a more serious way would not. That, of course, would be

backwards. Laws that strip a protected interest from a large class of people without notice should certainly raise due process concerns.

The Second Circuit recognized this in *Brody*. There, the proposed redevelopment project for which Brody's land was taken involved a 500,000-square-foot retail center in downtown Port Chester that encompassed 27 acres of land.[10] Brody, then, was far from the only property owner affected by the village's plans. *See Brody*, 434 F.3d at 124 (noting that Port Chester's urban renewal project covered its (supposedly) "blighted waterfront and downtown areas"). But the scope of Port Chester's project did not prevent the Due Process Clause from applying. *Id.* at 129. Instead, the dispositive inquiry was whether the village's no-notice public use determination impinged upon **Brody's** protected interests. *Id.* at 128–29. Finding that it did, the Second Circuit concluded that notice was required. *Id.* at 129. In this way, the legislative-versus-adjudicative question is like the question of an injury in fact for standing purposes: Both inquiries hinge on whether the

---

[10] *See* Mem. Supp. Defs.' Mot. J. on the Pleadings & Mot. in Lim. at 3, *Brody v. Village of Port Chester*, 2007 U.S. Dist. LEXIS 15746 (S.D.N.Y. Mar. 7, 2007) (No. 00 Civ. 7481 (HB)), 2006 U.S. Dist. Ct. Motions LEXIS 59522, at *16.

plaintiff can show that the government decision has inflicted an injury *particular to her. See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("[P]laintiffs must be able to sufficiently answer the question: What's it to you?" (cleaned up)). If so, the analysis ends.

Finally, the court below also cited five cases from other states holding that blight determinations are legislative. ROA.671 (citing cases from Illinois, Texas, Indiana, and Massachusetts); ROA.672–73 (citing case from Tennessee). In two of these states, owners may challenge the "legislative" determination of blight in a later proceeding; in two more, they likely can.[11] *See Village of Wheeling v. Exch. Nat'l Bank*, 572 N.E.2d 966, 971–72 (Ill. App. Ct. 1991) (considering and deciding validity of blight designation, based on evidence, in an eminent domain proceeding); *Adair v. Nashville Hous. Auth.*, 388 F. Supp. 481 (M.D. Tenn. 1974) (considering and deciding area met the definition of blight although challenge occurred nine years after original determination); *Reel Pipe & Valve Co. v. Consolidated City of Indianapolis-Marion County*, 633

---

[11] Massachusetts' law is not a model of clarity either, but Plaintiffs believe it is one of a handful of states that, like Mississippi, provides no notice regarding the blight designation and no opportunity to challenge it later. If so, it also violates due process.

N.E.2d 274, 277–78 (Ind. Ct. App. 1994) (concluding due process does not require notice surrounding the blight designation and relying on finding that owners would be able to challenge the designation in any future eminent domain proceeding); *Hardwicke v. City of Lubbock*, 150 S.W.3d 708, 714, 716–17 (Tex. App. 2004) (in an action to enjoin a taking, considering and deciding that area met the criteria for a reinvestment zone).

The district court's errors below are similar to the ones made by the district courts in *M.A.K.* and *Brody*. In *M.A.K.*, the district court held that the municipal determination of blight was merely a legislative decision, not subject to due process notice requirements. 897 F.3d at 1308 ("In the district court's view, M.A.K. did not have due process rights at stake because the blight determination was legislative in nature."). And in *Brody*, the district court found that notice by publication was sufficient "because public use is a legislative determination," so "no notice at all need be given before a legislature passes an ordinance authorizing the exercise of eminent domain." 434 F.3d at 128. In both cases, the appellate courts reversed. The Tenth Circuit refused to apply *Texaco v. Short* because, unlike a statute of limitations, where the government does

nothing to start a clock ticking, "Glendale took a formal action: it found M.A.K.'s property blighted. M.A.K. was not aware of that action." *M.A.K.*, 897 F.3d at 1316–17. And the Second Circuit held that individual notice was required despite the "legislative nature of the public use determination[.]" *Brody*, 434 F.3d at 129. This Court similarly should reverse.

## CONCLUSION

For the reasons explained above, this Court should reverse the decision below and allow this case to proceed to discovery.

Dated: June 11, 2025.          Respectfully submitted,

/s/ Dana Berliner

C. Elizabeth Feder-Hosey          Dana Berliner
FEDER-HOSEY LAW          *Lead Counsel*
P.O. Box 1618          Suranjan Sen
Ocean Springs, MS 39566          Dylan Moore
(228) 324-6038          INSTITUTE FOR JUSTICE
elizabeth@feder-hoseylaw.com          901 North Glebe Road, Suite 900
          Arlington, VA 22203
          (703) 682-9320
          dberliner@ij.org
          ssen@ij.org
          dmoore@ij.org

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service on all counsel of record will be accomplished by the appellate CM/ECF system.

/s/ Dana Berliner
*Lead Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 12,962 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced font using Microsoft Word 365 in 14-point Century Schoolbook.

/s/ Dana Berliner
*Lead Counsel for Appellants*